

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Nimra H. Azmi**
212.402.4072 tel

nimraazmi@dwt.com

**VIA ECF**

July 8, 2025

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, NY 11201

Re:   *Right To Be, et al. v. Bondi, et al.*, 1:25-cv-03676-KAM-CLP
       Pre-Motion Conference Letter re: Motion for Preliminary Injunction

Dear Judge Matsumoto:

We represent Plaintiffs Right To Be, South Asian Network, St. Barnabas Senior Center of Los Angeles, and Asian Pacific American Legal Resource Center (together, "Plaintiffs") in the above-referenced action. Pursuant to Your Honor's Rule III.B.1, we write this pre-motion letter and respectfully request a pre-motion conference at the Court's earliest convenience for Plaintiffs' anticipated Motion for Preliminary Injunction.

**Background**

On July 2, 2025, Plaintiffs filed a complaint against Defendants U.S. Attorney General Pamela Bondi, U.S. Department of Justice ("DOJ"), Acting Head of the Office of Justice Programs Maureen Henneberg, Office of Justice Programs, Acting Director of the Bureau of Justice Assistance Tammie Gregg, and the Bureau of Justice Assistance (together, "Defendants"). *See* ECF 1 ("Compl."). Plaintiffs challenge Defendants' unlawful dismantlement of the Congressionally funded Community-Based Approaches to Hate Crimes grant program ("Anti-Hate Crimes Grant Program" or "Program") whereby Defendants terminated all grants awarded for Fiscal Years 2022, 2023, and 2024, including those awarded to Plaintiffs. *See id.* ¶¶ 24, 39, 43-45, 61.[1] Plaintiffs bring this action under the Fifth Amendment Due Process Clause of the Constitution, the Constitution's Separation of Powers, the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*, ("APA"), and the Declaratory Judgment Act, 28 U.S.C. § 2210, *et seq.*, to enjoin and declare unlawful Defendants' illegal dismantling of the Anti-Hate Crimes Grant Program, including Defendants' termination of Plaintiffs' individual grants.

When Defendant's abruptly dismantled the Program on April 22, 2025, grantees, including Plaintiffs, were in the midst of their three-year grant performance periods. *See* Compl. ¶ 61. In keeping with Congress's command, Plaintiffs relied on these grants to fund critical programming

---

[1] In an effort to fight the pervasive social ill of hate-based crimes, starting in 2022, Congress began funding the Anti-Hate Crimes Grant Program through the Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 124–27 (2022); Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 4534–37 (2022); Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25, 145-49 (2024) (together, the "Appropriations Acts"). Compl. ¶¶ 1, 24, 35-39. Through this Program, Congress appropriated over $20,000,000 over the last three years to dozens of organizations to combat and prevent hate crimes. *Id.* ¶¶ 1, 39. In OJP's words, this Program funded grants to community-based organizations and national civil rights organizations, like Plaintiffs, to "support comprehensive community-based approaches to addressing hate crimes" that "promote community awareness and preparedness, increase victim reporting, and improve responses to hate crimes." *Id.* ¶ 41.

DWT.COM

The Honorable Kiyo A. Matsumoto
July 8, 2025
Page 2

in their communities by developing and implementing programs to address the prevalence of hate crimes against Asian Americans, the elderly, and LGBTQIA+ individuals. *See id.* ¶¶ 3, 49-56. All grantees were notified of the termination of the Program and their grants due to so-called "changed" agency priorities via mass-mailed boilerplate termination notices. *Id.* ¶ 64.

**Preliminary Injunction Motion**

Subject to Court approval, Plaintiffs intend to file for a preliminary injunction on the basis of their Separation of Powers and APA claims. A party seeking a preliminary injunction must demonstrate: "(1) a likelihood of success on the merits or … sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up). When evaluating these factors, Second Circuit courts take a "flexible approach and no one factor is determinative." *In re Sears Holding Corp.*, 659 B.R. 236, 248 (Bankr. S.D.N.Y. 2024) (citation omitted). Plaintiffs will satisfy all four prongs.

*First,* Plaintiffs will show that they are likely to succeed on the merits of their claims, because Defendants' unlawful dismantling of the Program violates the APA, *see* 5 U.S.C. § 706(2)(A)-(C), the Separation of Powers and is *ultra vires*.[2]

**APA.** Defendants flout Congress' Constitutional spending power by defying Congress's mandate to fund the Program, an act Defendants cannot justify by so-called changed agency "priorities." *See New York v. U.S. Dep't of Health & Hum. Servs.,* 414 F. Supp. 3d 475, 562 (S.D.N.Y. 2019); *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021). Further, Defendants' unexplained Program dismantlement is not in accordance with 2 C.F.R. Part 200, *et seq.* ("Uniform Guidance"), which DOJ is bound to abide by but does not permit wholesale elimination of a congressionally appropriated grant program. *See Fernandez v. Zoni Language Ctrs., Inc.*, 858 F.3d 45, 50 (2d. Cir. 2017); *Pacito v. Trump*, 772 F. Supp. 3d 1204, 1221 (W.D. Wash. 2025). Defendants also acted arbitrarily and capriciously by failing to reasonably explain their abrupt decision to terminate the Program, as exemplified by the mass mailing of boilerplate termination notices, failure to provide individualized explanation for terminations, and failure to consider Plaintiffs' reliance interests in the awarded grants before termination. *See, e.g., Nat. Res. Def. Council v. Dep't of Interior*, 410 F. Supp. 3d 582, 596 (S.D.N.Y. 2019); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020).

**Separation of Powers & *Ultra Vires*.** Next, because Defendants' defunding of the Program contravenes Congress's non-discretionary command in the Appropriations Acts, it also violates the constitutional principle of separation of powers and is *ultra vires*. *See Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, --- F. Supp. 3d ---, 2025 WL 996542, at *19 (S.D.N.Y. Apr. 3, 2025). In withholding lawfully appropriated funds, the Executive violates the separation of powers because "Congress sets the policy, not the [Administrator]." *Climate United Fund v.*

---

[2] Office of Justice Program's *en masse* termination of the Program, including the termination of grants awarded to Plaintiffs, constitutes a final agency action reviewable under the APA. 5 U.S.C. § 704.

The Honorable Kiyo A. Matsumoto
July 8, 2025
Page 3

*Citibank N.A.*, --- F. Supp. 3d ---, 2025 WL 1131412, at *16 (D.D.C. Apr. 16, 2025); *see also In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.).

*Second*, Plaintiffs will show irreparable harm caused by Defendants' unlawful Program termination. Plaintiffs have suffered and will continue to suffer irreparable harm to their organizational infrastructures and reputations by, among other things, being forced to (i) eliminate job positions of personnel with expertise and inroads developed over years with community-based organizations, law enforcement, and government officials, and (ii) shut down programming leaving gaps in services to at risk and struggling communities, including programs to address the prevalence of hate crimes against Asian Americans, the elderly, and LGBTQIA+ individuals. *See* Compl. ¶¶ 78-109; *see, e.g., Step By Step, Inc. v. City of Ogdensburg*, 176 F. Supp. 3d 112, 134 (N.D.N.Y. 2016) (irreparable harm where plaintiff had to eliminate job position and programs); *IME Watchdog, Inc. v. Gelardi*, 732 F. Supp. 3d 224, 240 (E.D.N.Y. 2024) ("[L]oss of reputation, good will, and business opportunities may constitute irreparable harm.") (citation omitted). Injunctive relief is also merited because future monetary relief cannot rectify Plaintiffs' losses and reputational injuries. *See Widakuswara v. Lake*, 773 F. Supp. 3d 46, 59 (S.D.N.Y. 2025). Further, Defendants have indicated that they want to promptly re-obligate these award funds, *see* Compl. ¶ 77, which may potentially moot Plaintiffs' claims absent prompt preliminary injunctive relief. *See County of Suffolk v. Sebelius*, 605 F.3d 135, 138 (2d Cir. 2010).

*Finally*, the balance of equities and public interest favor injunction, because "the public interest favors requiring the government to comply with the law," *Widakuswara,* 773 F. Supp. 3d at 61 (citation omitted), and there is substantial public interest in having agencies abide by federal laws, *see New York v. Trump*, 490 F. Supp. 3d 736, 747 (S.D.N.Y. 2020).[3]

**Proposed Briefing Schedule**

Plaintiffs propose that, if the Court grants leave to file their Motion for Preliminary Injunction, that (i) Plaintiffs file the motion within two business days of an order; (ii) Defendants respond within 14 days; and (iii) Plaintiffs file their reply within 10 days.

Plaintiffs also respectfully request that the Court schedule a telephonic pre-motion conference. We appreciate the Court's consideration.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP      ASIAN AMERICANS ADVANCING JUSTICE | AAJC
/s/ Nimra H. Azmi              /s/Niyati Shah
Nimra H. Azmi                  Niyati Shah*      *Pro Hac Vice* forthcoming

Cc: To all Defendants via Process Server

---

[3] This Court has subject matter jurisdiction over Plaintiffs' claims challenging the Program's unlawful defunding. The "essence" of this constitutional and statutory challenge is not contractual and Plaintiffs' source of right are not their grant agreements, but the three Appropriations Acts, the APA, the Uniform Guidance, and the Constitution. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967-68 (D.C. Cir. 1982); *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015). For relief, Plaintiffs seek to halt the Program's dismantling and restore their ongoing relationship with Defendants—*not* monetary damages. *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 478 (2d Cir. 1995); *see also* Maine Cmty. Health Options v. United States, 590 U.S. 296, 327 (2020) (APA is "tailored to" address "litigants' complex ongoing relationship" involving "constantly shifting balance sheets") (citation omitted).